## NEW YORK OYER AND TERMINER.

APRIL, 1849.

Before EDMONDS, Justice, and two Aldermen.

### THE PEOPLE v. WILLIAM PEARCE.

Elements to make a homicide justifiable.

Intoxication, how far an excuse for, or an aggravation of, crime.

Though the homicide be effected with a dangerous weapon, so as to be manslaughter in the third degree, yet it may be in the second degree, if the death is effected in a cruel or unusual manner.

THE prisoner was indicted for murder. He was a young man, about twenty years old, who earned his living by opening oysters and peddling fish. He was well known as Bill Jackson, about the Five Points, where he lived with a prostitute in a house of ill fame. He was addicted to the use of liquor, and when drunk was violent and abusive, and, as some of the witnesses said, it made him crazy.

On the day in question he had spent two or three hours with some companions in visiting different liquor stores, and during that time had drank six or eight times, and, as he was going into another liquor store, quite drunk, he ran against an Italian organ-grinder, and a quarrel occurred between them.

They came to blows, and the prisoner was knocked down, and after he got up he was pelted with ice by the organ-grinder. He went into the store and demanded of the clerk a club which he had left there. On obtaining it he rushed out and attacked the organ-grinder, who fled from him. He struck him one blow on the back of his head, which knocked him down, and struck him with the club five or six times after he was down. He then returned to the store and sat down, spending some time there. He said he had beat the man because he had called him a son of a bitch.

The organ man was helped home, and the next day he was taken to the hospital, where he died the ensuing night. A post mortem examination showed that the skull had been fractured. and blood had clotted between the brain and the skull, and caused death.

The defense set up was justifiable homicide, or at most that it was manslaughter in the third degree, and that the prisoner was too much intoxicated to know what he was doing, or to be responsible for his acts.

*The Judge* charged the jury that to make the homicide justifiable the prisoner must have retreated as far as he could, must have taken all the precautions in his power to prevent fatal consequences, and must have been in no fault himself.

That his intoxication was no excuse to him, and never is regarded as an excuse for crime unless it has gone so far and continued so long as, by delirium tremens or otherwise, to overturn the reason and deprive the party of his will power; until, indeed, it produced insanity. Until then it was an aggravation of, rather than an excuse for, crime.

The main question, however, in the case — for there was no ground to believe there was an intention to kill — was whether the offense was manslaughter in the second or third degree.

It was undoubtedly manslaughter in the third degree, for the club that was used was a dangerous weapon, and was used in the heat of passion.

But there was more than that in the case. Was not the death effected in the heat of passion, in a cruel and unusual manner? For if it was it came within the second degree, though the dangerous weapon mentioned in the description of the third degree had been used.

Verdict, guilty of manslaughter in second degree.